

FILED

MAR 27 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICURA TECHNOLOGIES, LLC,<br>RICURA WATER TECHNOLOGIES, LLC,<br>and PROTECT PLUS LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| UNDERWRITERS LABORATORIES, INC., | )<br>) |
| Defendant. | ) |

**07CV1695
JUDGE ANDERSEN
MAG. JUDGE MASON**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Ricura Technologies, LLC ("Ricura"), Ricura Water Technologies, LLC ("Ricura Water"), and Protect Plus LLC ("Protect Plus"), by their attorneys, James K. Toohey and Garrett L. Boehm, Jr., allege:

### Nature of Action

1. Plaintiffs bring this action against the defendant Underwriters Laboratories, Inc. ("UL") to recover actual, treble and punitive damages and to receive legal and equitable relief arising from UL's actions, including fraud, constructive fraud, negligent misrepresentations, negligence, unfair trade practices, deceptive business practices, and tortious interference with contract and with prospective business relationships.

2. Pursuant to an agreement between UL and Ricura, UL was to perform the certification that certain water-filtration products manufactured for Ricura met the standards set by the National Sanitation Foundation for the removal of contaminants and impurities. The water-filtration products were to be licensed using the DuPont brand name and were to be sold to Wal-Mart as part of a product development program between Ricura, Ricura Water, Protect Plus

and DuPont. In order to induce Ricura to contract with UL to provide certification services and to bestow the UL mark of distinction on the products upon completion of the testing. UL misrepresented its capabilities and resources to perform the testing required for the needed certifications, its ability to meet the timetable of Ricura, Ricura Water and Protect Plus and the support it would provide to Ricura during the certification process.

3.     Despite its representations, UL lacked the personnel, experience and resources to conduct and complete required certification testing on Ricura's products. UL never was able to complete the testing and certification it represented it could perform, lacked the skill to perform basic testing necessary to meet the applicable National Sanitation Foundation standards, and performed testing that proved to be grossly incompetent. Rather than provide the promised support and assistance to Ricura during the certification process, when it became apparent that it would be unable to complete the certification in a timely manner, UL repeatedly misled Ricura, Ricura Water and Protect Plus regarding the status of UL's testing, then wrongly disparaged and misrepresented the Ricura water filtration products to Wal-Mart and DuPont, attempted to extort additional payments from Ricura to complete the certification program and tortiously interfered with the relationship of Protect Plus with Wal-Mart and other potential customers.

## The Parties

4.     Ricura is a North Carolina Limited Liability Company with its principal place of business in Huntersville, Mecklenburg County, North Carolina.

5.     Ricura Water is a North Carolina Limited Liability Company with its principal place of business in Hickory, Catawba County, North Carolina.

6.     Protect Plus is a North Carolina Limited Liability Company with its principal place of business in Hickory, Catawba County, North Carolina.

2

7.     UL is an Illinois corporation with is principal place of business in Northbrook, Illinois.

## Jurisdiction

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 in that the defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Facts Common to All Claims

10.     Ricura is a company that has expertise in the design and development of filtration products. Ricura has developed filtration products that could be used in pitchers, refrigerators and on faucets to filter and purify water.

11.     Protect Plus is a company that was formed to introduce the water filtration products under the DuPont brand to mass merchandisers, such as Wal-Mart and Lowe's. The principals of Protect Plus, Robert W. Lackey, Sr. ("Mr. Lackey") and his son, Robert W. Lackey, Jr. ("Robb Lackey"), have an extensive history of the successful development of new products for use in the home and of introducing of those products for sale through mass merchandisers.

12.     Ricura Water was a company formed by the members of Ricura to facilitate the sale of the water-filtration products from the manufacturer of those products to Protect Plus and to Wal-Mart. Ricura Water purchased the products from the manufacturer and sold them to Protect Plus.

13.     Beginning in 2002, Mr. Lackey, a member and the founder of Protect Plus, began to put together a program for the manufacture and sale of filtered water pitchers, mounted faucet

3

filters and refrigerator filters (the "water-filtration products") for sale to Wal-Mart as the initial customer. Mr. Lackey reached an agreement with Ricura to work together to develop water-filtration products that incorporated Ricura's proprietary filtration technology and product designs. Ricura and Mr. Lackey agreed that Mr. Lackey would form a limited liability company that would be responsible for the sale and distribution of the water-filtration products to Wal-Mart. Protect Plus was the company that Mr. Lackey formed to sell the water-filtration products to Wal-Mart.

14.     Mr. Lackey determined that for its water-filtration products to be successful, it needed to have a major brand name to compete with Culligan, Pur and Brita. In 2002, Mr. Lackey began negotiating a license for Protect Plus to use the DuPont trade name and trademark on the water-filtration products that Protect Plus and Ricura were developing. DuPont agreed to be part of the program for water-filtration programs with Wal-Mart and entered into a formal licensing arrangement with Protect Plus to use the DuPont trade name and marks.

15.     In order to be acceptable to customers such as Wal-Mart and Lowe's and to be sold in the states of California, Iowa, Massachusetts and Wisconsin, water-filtration products must be certified for their claims that they remove specified contaminants and impurities. The standards that water-filtration products must meet are set by the National Sanitation Foundation ("NSF"). The four states that require certification accept certifications from NSF, UL, and the Water Quality Association ("WQA") that water-filtration products have been tested and meet the NSF standards. As a result, Ricura began to investigate the capabilities of NSF, UL and WQA to determine which could best provide the certifications for water-filtration products.

16.     UL is a corporation that engages in the investigation and testing of products concerning hazards affecting life and property and provides information to its customers based

4

on its analytical work in conducting such investigation and tests. UL holds itself out as a global leader in the testing and certification of products. UL allows manufacturers whose products meet UL certification requirements to use its federally registered marks on their products.

## Ricura's Interaction with UL

17. On September 9, 2003, Ricura and Protect Plus representatives met with UL representatives at Ricura's office. They explained the water-filtration product development program that Ricura, Mr. Lackey and DuPont were developing for introduction at Wal-Mart and to learn of UL's capabilities. Ricura told UL that Ricura sought certification under NSF Standards 42 and 53 that its water filtration products would remove 32 specific contaminants. It furnished the list of those 32 contaminants to UL. UL's representatives touted UL's expertise in the testing and certification of water-filtration products and the marketing value of the UL listing and the UL mark of distinction.

18. Ricura explained to UL that the certification of its products was required in time to meet the schedule that Wal-Mart had set for the rollout of Ricura's water-filtration products. Wal-Mart schedules the introduction of new products at specifically scheduled times with blackout periods against any rollouts around the Christmas shopping season. The tentative rollout date was late summer 2004. Ricura explained to UL that this would require considerable planning and co-ordination, because Wal-Mart planned a simultaneous rollout in all 3,000 of its stores.

19. After the initial meeting, Ricura informed UL that Ricura was considering seeking certification from more than one certifying agency. UL responded by touting the advantages of UL over NSF and WQA, including the UL listing and UL's mark of distinction on all of the

products and packaging. Ricura then arranged a joint meeting with representatives of both UL and WQA to address how the certifications would be provided.

20. Thereafter, on October 27, 2003, Kenn Vest of Ricura met with several representatives of UL and two representatives of the WQA at UL's office in Northbrook, Illinois to discuss the certification process and who would lead it. At that meeting, Andy Moschea of UL told Kenn Vest that UL wanted to be the lead certifying agency on their project due to its size and scope.

21. In order to induce Ricura to enter into a contract exclusively with UL as the lead certifying agency, Andy Moschea, Ken Jenke and Milan Dotlich of UL made the following representations to Kenn Vest and Glenn Cueman during the October 27, 2003 meeting and on later dates prior to the date Ricura signed the contract:

> (a) That UL had the expertise to test and certify that the Ricura water-filtration products meet the applicable NSF standards for all thirty-two claims that Ricura intended to make for those products;
>
> (b) That UL had the same capability as WQA and NSF to test and provide certifications to the NSF standards;
>
> (c) That UL had the capabilities and resources to be the lead certification agency without assistance from the WQA;
>
> (d) That UL had the capacity and resources to provide the certifications in a timely manner to meet time parameters provided to it by Ricura to meet Wal-Mart's expectations for the roll-out of the water-filtration products;
>
> (e) That UL would provide a "roadmap" for Ricura through the certification process and would be Ricura's "partner" in the development of its certified water-filtration products to be sold to Wal-Mart;
>
> (f) That UL would generate data that would be acceptable to, and meet the requirements of the states of California, Iowa, Massachusetts and Wisconsin; and
>
> (g) That upon completion of certification testing, UL would list all of the certified products on its web-site and authorize the use of the UL mark of distinction on all of the products.

6

22.     These representations were deceptive and false when made. In reality, as detailed hereinafter, UL did not have the capability, experience and expertise to perform the certification program that Ricura required and did not assist and partner with Ricura through the completion of the process.

23.     During conversations leading up to the execution of the Services Agreement on or about February 12, 2004, UL's representatives informed Ricura that UL had an extensive customer base in the water industry. Upon information and belief, UL in fact had a limited customer base in testing water-related products and had encountered difficulties in testing water filtration or purification products for Culligan and Kinetico and lost significant customers because of their dissatisfaction with UL. UL's representations concerning its extensive customer base were made and its omission of the fact that it had lost significant customers were concealed with the intent to deceive and mislead Ricura and to induce Ricura to enter into an agreement to procure certification services from UL that it would not otherwise have agreed to, and Ricura relied on those representations and omissions of material fact in selecting UL to provide certification services for its water-filtration program.

24.     In discussions prior to the execution of the February 12, 2004 contract (the "Services Agreement"), Andy Moschea re-stated each of the representations to Kenn Vest set forth above and continued to tout the marketing importance of the UL mark, and offered favorable financial terms to Ricura as inducement for Ricura to retain UL to induce Ricura to sign a contract naming it as the exclusive testing and certifying company for the Ricura water-filtration products. Ricura relied on these statements to its detriment in selecting UL to be its provider of certification services for its water-filtration program.

7

25. Ricura executed the Services Agreement with UL on or about February 12, 2004 in reliance on each of the representations that UL made to it and concealments that UL kept from it that are set forth above. Ricura also executed an addendum to that Services Agreement in which Ricura agreed that it would exclusively use UL to serve as the lead for services relating to the certification of its water-filtration products.

### UL's Performance under the Services Agreement – June 2004 through December 2004

26. After execution of the Services Agreement, representatives of Ricura and UL developed elaborate and detailed process flow charts and schedules required to track the testing and certification process and to meet the proposed Wal-Mart rollout date. UL and Ricura agreed that the testing for the products was to be completed by June 2004.

27. During 2004, Ricura worked with UL on monitoring the testing of the products in issue. Ricura kept track of the testing process based on information that UL provided. The schedule for product certification began to slide during the first half of 2004 as validation testing was performed and products were modified. As a result, Ricura negotiated a new rollout date for in-store launch at Wal-Mart of February 1, 2005. Thereafter, by letter dated August 25, 2005, UL amended its agreement with Ricura to provide that UL would complete the certification process by January 1, 2005. Based on its understanding that Ricura would begin to receive payment from Wal-Mart based on Wal-Mart's February 1, 2005 rollout date for the Ricura product line, UL contracted to accept its initial payment from Ricura on March 1, 2005.

28. In November 2004, Ricura and Protect Plus shared with UL its proposed packaging for the water-filtration products, which included the UL marks on the packaging together with the performance claims that Ricura and Protect Plus intended for each product to be sold. UL reviewed and approved the packaging.

8

29.     In December 2004, UL conducted a plant inspection of Kemflo, the manufacturing company in China that operated the facility where Ricura was having the water-filtration products manufactured. UL indicated verbally to Ricura and Protect Plus that the plant inspection went well. UL did not provide any written inspection report to Ricura or Protect Plus nor did it verbally express any problems with the plant or the manufacturing processes being employed there following the inspection until April 20, 2005, over four months thereafter. Moreover, UL made no indication that any additional inspections of Kemflo's manufacturing facility in China would be required or needed for UL's certification of the water-filtration products to be provided.

### UL's Actions Between
### January 2005 and April 2005 Evidence Inability to Perform

30.     UL did not complete the certification process by January 1, 2005, as it had represented to Ricura that it would. As result, Ricura and Protect Plus began to make frequent contact with UL to press UL on its anticipated completion date in their efforts to provide Wal-Mart with accurate and realistic information to Wal-Mart and to manage Wal-Mart's expectations for delivery of the water-filtration products.

31.     As a result, representatives of Ricura, Ricura Water and Protect Plus kept in contact with representatives of UL. Ken Jenke and Andy Moschea of UL informed Glenn Cucman, Kenn Vest and Bob Lackey in numerous conversations with all or some of them that the certifications of the water-filtration products would be posted on UL's website by early to mid-March, 2005.

32.     On February 7, 2005, UL informed Ricura that the test for lead removal was at a level that passed the NSF standard for certification.

9

33.    On February 11, 2005, Bob Lackey and Ricura's Glenn Cueman reviewed the status of UL's certification in a telephone conference with UL's Ken Jenke. Mr. Lackey told Mr. Jenke that he was not an expert in this field and, thus, he had to rely on Mr. Jenke for his professional assessment and guidance as to where their products were in the certification process. Mr. Jenke advised them that the certification process was going well and that the UL-listing and product certifications would occur within a few weeks at the most.

34.    On February 12, 2005, in reliance of UL's statements and in anticipation of the product rollout to Wal-Mart, Ricura began to ship water-filtration products from China to a warehousing facility in Memphis, Tennessee. Mr. Lackey and Ricura's Kenn Vest told UL's Moschea, Jenke and Ann-Marie Gebhart, that Ricura had begun shipping product from China so that it would be available for shipment to Wal-Mart.

35.    UL did not place the notice of certification of the products on its website by March 1, as it had represented that it would.

36.    When Mr. Lackey concluded from his frequent contacts that UL would not complete the testing and certify the products in time to meet the scheduled February 1, 2005 Wal-Mart rollout date, he was able to persuade Wal-Mart to move back its roll-out of the water-filtration products. Through a series of conversations between Wal-Mart and Mr. Lackey, Wal-Mart set a roll-out date of April 25, 2005. Mr. Lackey informed Moschea of the scheduling needs of Wal-Mart and again told Moschea that the water-filtration products were being shipped from China to be available to meet Wal-Mart's needs.

37.    In mid-February 2005, Ricura and Protect Plus learned that the manufacturer of one of its water-filtration products, the WF-IR100 refrigerator filters, had used a foam insert in the filter as a spacer, which was not in accordance with the specifications. Upon learning of this

10

deviation, Ricura and Protect Plus promptly quarantined the refrigerator filter in question and made arrangements to inspect each filter to determine if the foam insert was present and if that product had to be rejected. Representatives of Ricura and Protect Plus promptly informed Ken Jenke and other UL representatives of the problem and their plan to interdict and quarantine all non-conforming goods. Mr. Jenke approved their plan.

38.    On March 17, 2005, Anne Marie Gebhart of UL sent an e-mail to Ricura stating that certification was recommended for all of the water-filtration products for certain claims and that other claims needed verification of favorable test results.

39.    In reliance of UL's representations that the certifications were forthcoming, Protect Plus on April 4, 2005 began to ship product from its warehouse in Memphis to Wal-Mart stores.

40.    Despite its prior representations of experience and expertise and despite working on the water certification project for much more than a year, UL:

>    (a)    was never able to provide the certifications for the products that it represented it could give;

>    (b)    failed to conduct and complete the tests on 7 of the 17 organic compounds it had promised it could test and certify;

>    (c)    failed to complete tests for lead and mercury, which are critical contaminants to be removed if a water-filtration product is to be marketed successfully;

>    (d)    generated test results that often made no sense and were highly inconsistent. For example, the same device would be reported as failing to remove contaminants which had been proven easily removable at high

levels, while easily passing the standard by removing far more difficult contaminants;

(e) invalidated successful tests because testing problems on other tests in the series would invalidate the entire test series;

(f) frequently required additional tests that only caused additional delay to Ricura, Ricura Water and Protect Plus when its own data generated false test results;

(g) generated false test results; and

(h) lacked the basic scientific competence to test for benzene, a critical contaminant in the certification process, and after several test failures and delays, Ricura had to train UL's test engineers on the basic scientific principals involved in testing for benzene.

## March 2005 UL Commences Cover-up of its Own Incompetence

41. At some point in March 2005, UL terminated the employment of Ken Jenke, UL's Project Manager for the certification of the water-filtration products. UL did not inform Protect Plus or Ricura of this termination until late March or early April of 2005. UL had touted Mr. Jenke's expertise in water-filtration to induce Ricura to execute the Services Agreement. UL terminated Mr. Jenke due to his inability to conduct the certification program competently.

42. In mid-March, UL reversed its prior approval of the packaging and informed Ricura that the packaging was not approved.

43. On April 7, 2005, UL reneged on prior test reports, telling Ricura that it would have to redo the lead test, despite that it had approved the product's performance in the lead test on February 7, 2005, based on its discovery of problems with UL's testing procedures and

12

calculations. Subsequently, WQA properly ran the test for lead and all the water-filtration products passed.

44.     On April 8, 2005, under increasing pressure from Wal-Mart, Mr. Lackey arranged a conference call to review the status of product certifications with UL's Andy Moschea of UL, Wal-Mart's Brian Hughes, and Ricura's Glen Cucman and Barney Ramsey. Moschea told everyone on the call that all certifications would be on all products and posted on UL's website by April 11, 2005.

45.     Based on UL's representations directly to Wal-Mart that the products would be certified and posted, Protect Plus continued to ship products from its warehouse in Memphis, Tennessee to Wal-Mart stores for the planned rollout date of April 25, 2005.

46.     On or about April 11, 2005, UL did list some of the water faucet filters and pitchers as having met certification testing for certain claims, but it did not list refrigerator water filters. UL listed Protect Plus as the holder of the certifications.

47.     Because UL had not completed the testing as it had represented, the product certifications that UL did post on its website did not match up with the claims that Ricura, Ricura Water and Protect Plus had printed on the product packaging in reliance of UL's representatives that certification for those claims were forthcoming.

48.     Faced with this dilemma, Protect Plus, Ricura and Ricura Water attempted to negotiate with UL on how to place stickers over the packaging of the products at Wal-Mart and at the warehouse in Memphis to where they had been shipped with revised claims consistent with UL's limited certifications, so that the product could be sold in Wal-Mart stores with appropriate certifications.

13

## April 2005 – UL Seeks to Destroy Program by
## Withholding Certifications and Disparaging Products

49.     On an unknown date approximately 7-10 days after UL had listed the Ricura products on its website on April 11, 2005, UL pulled all of the listings of Ricura water-filtration products off its website without any notice to Protect Plus, Ricura or Ricura Water.

50.     UL did not inform Ricura, Ricura Water or Protect Plus of the de-listing. Instead, after UL pulled the listings off the UL website, Joseph Castino of UL called Brian Hughes at Wal-Mart and told him that the water-filtration products were not authorized to bear the UL mark. He also informed Wal-Mart that UL had safety concerns about the products. Ricura, Ricura Water and Protect Plus learned of UL's de-listing of these certifications from Wal-Mart.

51.     Plaintiffs immediately contacted UL concerning the de-listing. Despite UL's assurances in March 2005 that Ricura and Ricura Water had addressed the issue with the foam insert in the model WF-IR100 refrigerator filter appropriately with their interdiction and quarantine program, Joseph Castino of UL advised that the foam insert was now an issue. He also demanded that Ricura, Ricura Water, and Protect Plus provide him with extensive documentation with respect to this issue of which it had known about for several weeks.

52.     On April 20, 2005, UL raised for the first time questions about the product audit that it had conducted and completed in early December 2004. UL sent to Kemflo, the contract manufacturer of the water-filtration products, a Quality System Audit Summary that listed six minor deficiencies in Kemflo's record keeping but that raised no serious manufacturing or quality issues. Kemflo responded to UL with a Corrective Action Report on April 22, 2005 that addressed each of these issues.

14

53.     On or about April 21, 2005, Joseph Castino of UL wrote Chuck Kerby of Wal-Mart and informed him that the water-filtration products that had been delivered to Wal-Mart for the product rollout were counterfeit.

54.     On April 27, 2005, UL's Compliance Group arrived at the Kemflo plant in China that was manufacturing the water-filtration products and performed a two-day audit known as "Initial Production Inspection" or "IPI" of the facility and its processes. UL had not reviewed the need or discussed this IPI with anyone at Ricura or Protect Plus until a few days before it occurred. Ricura had requested that UL provide it of advance notice and inform it of each step in the certification process during the months they had been working together, but UL never disclosed the need for the IPI until shortly before it occurred, after it had initially certified the products, and after numerous earlier promises of imminent certification.

55.     John Wu, UL's agent in China for the purpose of performance of the inspection, told representatives of Kemflo and a representative of Protect Plus who was at Kemflo's facility that UL instructed him to find any reason possible to shut down Kemflo's production and to find reasons for Kemflo's plant inspection to fail the IPI.

56.     Although UL was aware that Ricura, Ricura Water and Protect Plus had been shipping product from China to the United States for weeks and in fact was discussing how to sticker over certifications of products at Wal-Mart stores, UL claimed that the IPI revealed for the first time that products had been shipped from China to the United States without UL's knowledge and in violation of UL's rules. As a result of UL's position that no product shipped to the United States prior to this IPI audit could be sold bearing UL's marks, custom's officials in China would not allow the water-filtration products to be shipped to the United States.

57.     By the date of the IPI, Protect Plus had shipped water-filtration products to Wal-Mart stores in reliance on the listings and certifications promised and given (but later revoked) by UL.

58.     Shortly, after the IPI, Wal-Mart informed Protect Plus that Linda Robinson, a representative of UL, had called Wal-Mart and informed representatives of Wal-Mart that the water-filtration products were "counterfeit." All such statements made to Wal-Mart were intended to and did disparage Protect Plus, Ricura and Ricura Water to Wal-Mart.

59.     UL representatives also contacted and told DuPont that the Ricura and Protect Plus goods were "counterfeit", that they had shipped those "counterfeit" goods to Wal-Mart without authorization to ship the goods, that the products had failed the IPI, and that such actions by them raised health and safety issues. All such statements made to DuPont were intended to and did disparage Protect Plus, Ricura and Ricura Water to DuPont.

60.     Given the presence of the products in Wal-Mart and reports of some premature sales of some product prior to the agreed upon roll-out date, UL demanded that Ricura pay it to inspect Wal-Mart stores at a cost of $1000 per store to determine if any product was being sold with UL's marks. Given that Wal-Mart had 3000 stores, Ricura's potential exposure for agreeing to this demand could have cost Ricura $3,000,000 going forward. UL insisted on inspections at Wal-Mart stores as a basis for going forward with Ricura, Ricura Water and Protect Plus to complete the certification process.

61.     In early May, Ricura and Protect Plus pulled the water-filtration products out of all 3000 Wal-Mart stores to which they had been shipped and returned them to a facility in Memphis, Tennessee. Ricura, Ricura Water and Protect Plus made this decision because of UL's de-listing of its certification of the water-filtration products off its website, UL's inability to

16

certify the products, UL's claim that Ricura and Protect Plus were violating UL's trademark rights, UL's disparagement of the products to Wal-Mart and DuPont, UL's demand of up to $3 million in inspection fees in connection with the IPI, and UL's denial of any use of the UL mark or certification tests.

62.     Protect Plus re-packaged the products without the UL mark.

63.     Much of UL's testing of the water-filtration products was unnecessary and was not in the best interest of Ricura. Due to the nature of NSF testing protocols, UL's unnecessary and duplicative testing was not consistent with industry practice. UL's churning of the testing was to advance its own pecuniary interest, was contrary to its representation that it would test the product in a fair manner under the applicable NSF protocols, and served only to increase the likelihood that Ricura's water-filtration products would fail the tests and require further testing.

64.     To mitigate their damages, Ricura and Protect Plus asked UL to release what test data it had to the WQA so that the WQA could certify the products. UL refused to do so on a timely basis.

65.     When Ricura and Protect Plus ultimately took the certification process for the water-filtration products to the WQA, it was able to certify many of Ricura's claims for the products within a few weeks, but others took several months due to flawed and incomplete data from UL. The water-filtration products that Protect Plus sold to Wal-Mart with the WQA certification were safe and effective, and were able to perform in accordance with the claims that the WQA certified for them.

66.     The review of UL's data by the WQA and state agencies revealed that UL could not perform and negligently performed basic testing of key contaminants. For example, UL was not able to formulate the appropriate influent levels to test for key contaminants such as benzene,

17

lead and mercury. WQA had to re-test on many claims due to UL's incompetence. UL's improper testing caused substantial delays that prevented Ricura and Protect Plus from being able to sell the water-filtration products in California because the California regulatory officials found UL's work to be incompetent and not trustworthy.

## Damages

67.     The conduct of UL caused considerable damage to Ricura, Ricura Water and Protect Plus. Those damages include the costs of re-designing some products, the cost of certification at the WQA, the costs of recalling the products from Wal-Mart and re-packaging them, and the costs of having to bring in the water-filtration products by airfreight due to the delays of UL. These out-of-pocket damages exceed $5 million.

68.     Protect Plus' relationship with Wal-Mart was also damaged. After Protect Plus recalled the products from Wal-Mart, Wal-Mart informed Protect Plus of the substantial damages it had incurred due to delays in the rollout of the water-filtration products. Wal-Mart required Protect Plus to make substantial financial concessions to re-introduce the product into Wal-Mart stores. Wal-Mart and Protect Plus negotiated a permanent discount from Protect Plus that was to be applied to the sale of replacement filter cartridges to Wal-Mart. That concession was attributable to UL's wrongful conduct described herein. The loss of credibility at Wal-Mart also harmed the ability of Protect Plus to introduce other product lines at Wal-Mart.

69.     UL's conduct also cost Ricura, Ricura Water and Protect Plus a significant loss of sales due to the delayed product introduction that deprived them of an important competitive advantage against their competitors like Brita and Pur. If UL had not misrepresented its ability to certify the water-filtration products and fraudulently induced Ricura to execute the Services Agreement, Protect Plus and Ricura would have certified the water-filtration products with the

18

WQA and entered the market with Wal-Mart by the planned rollout date of February 1, 2005, which would have created surprise and a significant price advantage over its competitors. The posting and removal of the certifications by UL and the delay in the rollout allowed the competitors of Ricura and Protect Plus to react with marketing and pricing strategies that impeded the introduction of the water-filtration products of Ricura and Protect Plus in the market.

70.     In the re-introduction of the product at Wal-Mart, Wal-Mart also insisted on paying less for the products due to the damages it had suffered as a result of delays in receiving the water filtration products. As a result of UL's conduct, Ricura, Ricura Water and Protect Plus have suffered millions of dollars in lost profits.

### First Claim for Relief
### (Fraudulent Inducement to Enter into a Services Contract)

71.     Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

72.     UL made one or more false statements of fact and failed to disclose information known to it that it had a duty to disclose to Ricura, as set forth above in Paragraphs 17-24. UL also omitted material information regarding UL's expertise and capability to certify water-filtration products, include that information set forth above in Paragraph 23, which also induced Ricura to enter into the Services Agreement.

73.     UL made those statements with knowledge of their falsity to induce Ricura to enter into the Services Agreement.

74.     Ricura reasonably and justifiably relied on them to its detriment.

75.     Ricura would not have entered into the contract had it known the truth.

19

76.     The services contract that UL induced Ricura to enter into by its fraudulent acts and omissions as alleged herein is void and unenforceable and must be held for naught.

## Second Claim for Relief
## (Fraud)

77.     In Spring 2005, as set forth in Paragraphs 27, 31, 33, 38, and 44 above, UL made further false statements regarding the status of its certification process.

78.     UL made further false statements to Ricura, Ricura Water and Protect Plus regarding its ability to complete the testing it had agreed to do.

79.     Further, UL fraudulently concealed that it lacked the resources, expertise and experience to complete the certifications as it represented that it could.

80.     Further, UL fraudulently concealed the true status of its progress on the testing and certification of the water-filtration products.

81.     UL made those false statements with knowledge of the falsity of the factual statements and concealed those facts that it had a duty to disclose with knowledge that it was misleading Ricura, Ricura Water and Protect Plus by withholding information that each needed to know with the intent to deceive Ricura, Ricura Water and Protect Plus,

82.     Ricura, Ricura Water and Protect Plus justifiably relied on those false statements and the absence of the fraudulently concealed information to its detriment in continuing to allow UL to run the test program toward the promised completion of the certification process.

83.     Ricura, Ricura Water and Protect Plus suffered damages to their respective businesses that were proximately caused by UL's fraud in an amount in excess of $75,000 and are entitled to recover their actual damages in an amount to be proven at trial. Defendant is subject to the imposition of punitive damages based on its willful misconduct in an amount

sufficient to punish it and to deter it and others similarly situated from engaging in such misconduct in the future.

## Third Claim for Relief
## (Negligent Misrepresentation)

84.     Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

85.     UL made statements and provided factual information and failed to provide other information that should have provided as set forth in Paragraphs 27, 31, 33, 38, and 44 above in the course of its business as a provider of information and in transactions in which UL had a pecuniary interest.

86.     UL owed Ricura, Ricura Water, and Protect Plus a duty requiring it to exercise reasonable care in providing that was truthful and to provide all information that it should have provided as a provider of information in those transactions in which UL had a pecuniary interest.

87.     In violation of that duty and was negligence in obtaining and communicating the information that UL provided information to Ricura, Ricura Water and Protect Plus, instead providing information to them that was false while failing to reveal other information that it knew was required by Ricura, Ricura Water and Protect Plus.

88.     Ricura, Ricura Water and Protect Plus reasonably relied on the false information that UL provided to them to their detriment.

89.     Ricura, Ricura Water and Protect Plus suffered damages that were proximately caused by UL's negligence.

90.     Ricura, Ricura Water and Protect Plus each have suffered damages in amounts in excess of $75,000 and they are entitled to recover damages in amounts proven at trial to have been caused by UL's negligent misrepresentations.

## Fourth Claim for Relief
### (Unfair Trade Practice Violation of N.C. Gen. Stat. §75-1.1)

91.     Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

92.     UL's conduct, as described above, was in commerce, and affected and injured Ricura, Ricura Water and Protect Plus where they reside in North Carolina.

93.     UL's misrepresentations and omissions that induced Ricura to execute the Services Agreement constitute unfair and deceptive trade acts and practices in violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

94.     UL's unfair and deceptive trade acts and practices included: (a) its repeated misrepresentations to Ricura, Ricura Water and Protect Plus; (b) its pretextual Initial Product Inspection that was used to impound the water-filtration products in China; (c) its attempt to force unneeded inspections at Wal-Mart stores at a cost of up to $3 million; (d) its disparagement to Wal-Mart and DuPont that the water-filtration products were "counterfeit" and raised health concerns; (e) its refusal to turn over testing data to Ricura in a timely manner; and (f) its unnecessary churning of the testing of the products, one or more of which constituted a violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

95.     UL's conduct referenced in Paragraphs 50, 53, 58, 59, and 60 above, also constitute inequitable assertions of UL's power and position in violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

96.     By reason of UL's unfair and deceptive acts and trade practices, Ricura, Ricura Water and Protect Plus have been injured in an amount in excess of $75,000 and are entitled to recover damages in an amount to be proven at trial, including trebled damages pursuant to N.C. Gen. Stat. § 75-16, and their reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

### Fifth Claim for Relief
### (Illinois Deceptive Trade Practices Act – Violation of §2(8)
### of Illinois Deceptive Trade Practices Act

97.     Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

98.     UL's statements to Wal-Mart and DuPont set forth in paragraphs 50, 53, 58, 59, and 60 above, disparaged the goods, services and business of Ricura, Ricura Water and Protect Plus.

99.     UL's statements disparaging the water-filtration products of Ricura, Ricura Water and Protect Plus were false when made.

100.    UL's statements disparaging the water-filtration products of Ricura, Ricura Water and Protect Plus have damaged and caused injury to each of them in an amount in excess of $75,000, the exact amount to be proven a trial.

101.    UL's statements disparaging the water-filtration products of Ricura, Ricura Water and Protect Plus constitute a violation of 815 ILCS 505/2(8) and entitle plaintiffs to all remedies available under the Illinois Deceptive Trade Protection Act.

### Sixth Claim for Relief
### (Illinois Consumer Fraud and
### Deceptive Business Practices Act)

102.    Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

103.    UL's conduct described above, including (a) its repeated misrepresentations to Ricura, Ricura Water and Protect Plus; (b) its pretextual IPI that was used to impound the water-filtration products in China; (c) its attempt to force unneeded inspections at Wal-Mart stores at a cost of up to $3 million; (d) its disparagement to Wal-Mart and DuPont that the water-filtration products were "counterfeit" and raised health concerns; (e) its refusal to turn over testing data to

23

Ricura; and (f) its unnecessary churning of the testing of the water-filtration products are deceptive acts and practices.

104.    UL intended for Ricura, Ricura Water and Protect Plus to rely on UL's deceptive acts and practices to mask UL's incompetence and maintain the certification program at UL through deception, concealment and coercion.

105.    UL intended for Wal-Mart and DuPont to rely on UL's deceptive acts and practices to shift the blame for UL's failed certification program from UL to Ricura, Ricura Water and Protect Plus.

106.    UL's deceptive acts and practices occurred in during a course of conduct that involved trade and commerce.

107.    As a direct and proximate result of UL's deceptive acts and practices, Ricura, Ricura Water and Protect Plus were injured and each suffered damages in excess of $75,000, the exact amount to be proven at trial.

108.    UL's deceptive acts and practices constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 81 ILCS 505/1 *et seq.* and entitle plaintiffs to all remedies available under that act.

## Seventh Claim for Relief
### (Constructive Fraud)

109.    Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

110.    Prior to seeking the certification of the water-filtration products involved in this lawsuit, Ricura had limited prior experience in seeking certification of water-filtration products.

111.    Ricura told UL that the party Ricura selected to certify its product would have to work actively with Ricura to guide Ricura through the certification process.

24

112.    UL's representatives told Ricura that it would act as Ricura's "partner" in the certification process would provide it a "roadmap" to guide it through the certification process and would act in Ricura's best interests to facilitate a successful certification process that would test the water-filtration products according to NSF Standards 42 and 53.

113.    UL's representations in this regard created a relationship of trust and confidence between UL and Ricura. This relationship created a fiduciary duty on the part of UL to Ricura.

114.    UL violated that fiduciary duty and position of trust by undertaking the conduct described above.

115.    As a direct result of UL's constructive fraud, Ricura has been injured and has suffered damages in excess of $75,000. Ricura is entitled to recover its damages in amounts to be proven at trial and to an order requiring UL to disgorge the payments it has received to date from Ricura.

## Eighth Claim for Relief
### (Negligence)

116.    Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

117.    UL owed Ricura, Ricura Water and Protect Plus a duty of due care to conduct its program of testing and production certification in the process of providing information and guidance to them.

118.    UL breached that duty of care and was negligent in performing the certification program, representing the status of the certification program to Wal-Mart, Ricura, Ricura Water and Protect Plus, and disparaging the water-filtration products to Wal-Mart and DuPont.

119.    UL's negligence was a proximate cause of injury to Ricura, Ricura Water and Protect Plus.

120. Ricura, Ricura Water and Protect Plus have each suffered actual damages as a proximate result of UL's negligence in an amount in excess of $75,000 and are entitled to recover their damages in an amount to be proven at trial.

## Ninth Claim for Relief
### (Tortious Interference)

121. Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

122. Ricura and Ricura Water had a valid agreement with Protect Plus for Protect Plus to distribute and sell the water-filtration products to Wal-Mart.

123. Protect Plus had a valid agreement with Wal-Mart to sell water-filtration products to Wal-Mart.

124. Ricura and Protect Plus had told UL, and UL knew, of these contractual relationships between Ricura and Ricura Water and Protect Plus, and Protect Plus and Wal-Mart.

125. By representing to Wal-Mart that the water-filtration products that Protect Plus had shipped to it were "counterfeit" and that Protect Plus had no right to use the UL mark, UL intentionally induced Wal-Mart to reject the products and forced the return of those products from Wal-Mart back to Protect Plus.

126. The conduct of UL in this regard was a tortious interference with Protect Plus' agreement and business relationship with Wal-Mart to buy water-filtration products from Protect Plus and tortious interference with the contractual relationship between Ricura and Protect Plus.

127. UL acted without justification in this regard and was attempting to cause Wal-Mart to conclude that the blame for the delay in the rollout of the water-filtration products was with Ricura and Protect Plus and was not with UL.

128.     UL's tortious interference damaged both Ricura and Protect Plus as a result of the costs expended and profits lost due to the product recall from Wal-Mart and the re-packaging of the products, the significant lost sales, and significant lost profits. Plaintiffs have each been damaged as a result of UL's wrongful conduct in an amount in excess of $75,000 and are entitled to recover their actual and punitive damages in an amount to be proven at trial.

## Tenth Claim for Relief
## Tortious Interference with Prospective Earnings Advantage

129.     Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs as if fully set forth herein.

130.     Ricura, Ricura Water and Protect Plus had a reasonable business expectation of entering into valid business relationships with Wal-Mart and other retailers for the sale of their water-filtration products in the spring 2005.

131.     UL had knowledge of the plaintiffs' business expectancy to sell to Wal-Mart and other retailers, such as Lowe's, because plaintiffs told UL of their expectancy.

132.     UL's interference and tortious conduct described above prevented plaintiff's legitimate expectation from ripening into a valid business relationship. Plaintiff's business relationships were delayed and damaged and ultimately occurred on terms not as favorable to Ricura, Ricura Water and Protect Plus due to UL's interference.

133.     Ricura, Ricura Water and Protect Plus were damaged as a result of UL's interference in an amount in excess of $75,000 and are entitled to recover their actual damages and punitive damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray that the Court:

I.       Enter judgment in their favor on all of their affirmative claims for relief;

II.      Award the Plaintiffs' their damages, including treble damages and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 and 81 ILCS 505/1 *et seq.*, common law punitive damages for willful misconduct intending to harm, costs, and interest to the extent allowed under any statutory claim asserted;

III.     Provide such other and further equitable and legal relief in this action as may be just and proper under the statutory and common law claims asserted.

**PLAINTIFFS DEMAND TRIAL BY JURY**.

Dated this 27th day of March 2007.

James K. Toohey
Illinois Bar No. 2844621

JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404
Telephone: 312-984-0280
**Counsel for Plaintiffs**
**RICURA TECHNOLOGIES, LLC,**
**RICURA WATER TECHNOLOGIES, LLC,**
**and PROTECT PLUS LLC**

OF COUNSEL:
Mark W. Merritt
ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: 704.377.2536

Doc 1583073